UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:13CV-00012-JHM

DENIECE BYRD                                                                                                       PLAINTIFF

VS.

THOMAS J. VILSACK,
SECRETARY OF AGRICULTURE                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Thomas J. Vilsack, Secretary of Agriculture, for summary judgment dismissing Plaintiff's claims for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and for age discrimination under the Age Discrimination Employment Act, 29 U.S.C. § 621–634 [DN 41]. Fully briefed, this matter is ripe for decision.

### I.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Deniece Byrd, filed a gender discrimination action pursuant to Title VII of the Civil Rights Act of 1964 and an age discrimination action under the Age Discrimination Employment Act (the "ADEA") against the Defendant, Thomas J. Vilsack, Secretary of Agriculture, alleging that the agency did not hire her for the position of Farm Loan Manager for the Kentucky State Farm Service Office in Daviess County, Kentucky, as a result of gender and age discrimination.

In March of 1984, Byrd began working for the United States Department of Agriculture ("USDA") Farmers Home Administration, which is the predecessor organization to the Farmers Service Agency ("FSA"), as a Farm Loan Officer. Byrd testified that she was offered a management position with the FSA in the early 1990s, but she declined the position. She continued to work in the Owensboro office without applying for any management positions until the 2012 retirement of Kathy Hazelwood, Farm Loan Manager in Byrd's office. The USDA posted the Vacancy Announcement for Supervisory Loan Specialist (Agricultural). The duties of the positon were listed as follows:

- Manages and directs the Farm Loan Programs administered in one or more USDA Service Centers providing services to one or more counties in the State.
- The Farm Loan Manager serves as the Service Center technical authority on the Farm Loan Programs and the primary point of contact on all farm loan issues addressed in the counties serviced.
- Supervises and directs the work of a subordinate staff responsible for making, servicing, and liquidating loans under FSA farm loan authorities.
- The incumbent has delegated loan approval authority and performs the full range of loan specialist duties, attends public meetings with various groups and associations, and performs public relations and outreach efforts in the geographic areas serviced.
- The position requires knowledge of the technical and administrative concepts, principles, and practices of farm loan and financial management, and knowledge of farm operations, land use and value, and production and marketing of various crops and livestock.

(Administrative Record at 171.)

After the Vacancy Announcement closed, John McCauley, FSA State Director for Kentucky, appointed a panel to interview Byrd and four other applicants. The interview panel for the position in question consisted of the following: (1) Donald Dunn, born 1959, District Director; (2) Mitchell Whittle, born 1954, Farm Loan Program Chief; and (3) Deborah Wakefield, born 1970, Administrative Officer, Kentucky State Office of the FSA. Javier Garza, a USDA Civil Rights Officer, was also present during the interviews as an observer. The interview panel conducted the interviews on February 23, 2012. The panel unanimously selected Michael Miller, a male born in 1979, for the Owensboro vacancy. On February 24, 2012, Byrd received notice that she had not been selected for the positon. Byrd subsequently retired from her position as farm loan officer with the FHA in February of 2016.

Believing that the agency's failure to promote her was motivated by age and gender, Byrd contacted an Equal Employment Opportunity Counselor on March 20, 2012. On May 3, 2012, Byrd filed a complaint with the Equal Employment Opportunity ("EEO") Counseling and Mediation Branch of the Farm Service Agency. An EEO investigator interviewed the members of the interview panel, retired Farm Loan Manager Kathy Hazelwood, and Byrd. The investigator issued the Report of Investigation on August 21, 2012. (Administrative Record at 1.)

On September 21, 2012, Byrd elected to have the Agency issue a decision. The USDA Officer of Adjudication issued its Final Agency Decision determining the weight of the evidence established that discrimination did not occur. (Final Agency Decision at 9, DN 46-2.) On February 19, 2013, Plaintiff filed this current action. Defendant now moves for summary judgment.

### III. DISCUSSION

Defendant argues that summary judgment on Plaintiff's claims of gender discrimination under Title VII, 42 U.S.C. § 2000e–2(a)(1), and age discrimination under the ADEA, 29 U.S.C. § 621–634, should be granted because Plaintiff failed to submit direct evidence of discrimination, failed to state a *prima facie* case, and failed to show that the legitimate, nondiscriminatory reason for Plaintiff's non-selection was a pretext for unlawful discrimination. Defendant also maintains that the statistical evidence on which Plaintiff relies is insufficient to support a claim of unlawful discrimination. Because the evidence submitted by the parties is essentially the same for both the gender and age discrimination claims, the Court will consider both claims at the same time.

**A. Direct Evidence**

A plaintiff may support a claim of age discrimination in employment by offering either direct or circumstantial evidence of discrimination. Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004); Lewis-Smith v. Western Kentucky Univ., 85 F. Supp. 3d 885, 915–16 (W.D. Ky. 2015). The Court finds unpersuasive Plaintiff's argument that she possesses direct evidence of gender and age discrimination. In support of this contention, Plaintiff argues that in December of 2011 retired Farm Loan Manager Kathy Hazelwood had been informed by Mitch Whittle, a member of the interview panel, that Michael Miller had been "taken care of" in regards to the Owensboro position. (AR 134.) Hazelwood initially interpreted the statement to mean that Mr.

4

Miller was already a farm loan manager, and therefore, had been taken care of. (Id.) Plaintiff indicates that the information that was shared with her was that Whittle had made a deal with Miller that if he would straighten up the conditions in the New Castle Farm Service Office, he would later be transferred to another farm loan manager position in the near feature. (Byrd Dep. at 47-48.) Therefore, according to Plaintiff, the fact that a younger, male candidate was promised by someone on the interview panel that he would be taken care of less than two months before the hiring process began constitutes direct evidence of gender and age discrimination. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). Plaintiff's evidence does not constitute direct evidence of gender or age discrimination because it does not require the Court to conclude that discrimination occurred. An inference of discrimination might be drawn from the evidence; thus, it constitutes circumstantial evidence and is subject to review under the McDonnell Douglas framework.

    B. Prima Facie Case

Defendant first argues that Plaintiff has failed to make out a *prima facie* case of discrimination under Title VII or the ADEA. Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Likewise, the ADEA makes it unlawful for an employer to "fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. Where, as here, a plaintiff offers only indirect evidence of discrimination, she may establish a

5

*prima facie* case under Title VII or the ADEA by showing: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008); Battle v. Haywood County Bd. of Educ., 488 Fed. Appx. 981, 985 (6th Cir. 2012).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410–11 (6th Cir. 2008); Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This means that in order to withstand a motion for summary judgment a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994). overruled on other grounds by Geiger v. Tower Auto., 579 F.3d 614 (6th Cir. 2009).

Defendant concedes that Plaintiff is a member of a protected class, qualified for the job, and she applied for and was denied the position which qualifies as an adverse employment action. However, Defendant argues that Plaintiff failed to demonstrate that she had similar qualifications to Miller who was ultimately hired for the position. According to Defendant, Byrd was not as qualified as Miller because she did not have the equivalent of Miller's managerial experience and proven record of managerial success. Additionally, in the opinion of all three interviewers, Miller performed extremely well during his previous tenure as farm loan manager.

6

In support of its argument that Plaintiff failed to establish her *prima facie* case, Defendant cites White v. Columbus Metro. Housing Auth., 429 F.3d 232, 242 (6th Cir. 2005) in which the Sixth Circuit upheld summary judgment in favor of an employer in failure-to-promote gender discrimination case in part because the selectee had supervisory experience and the plaintiff did not. But see Battle v. Haywood County Bd. of Educ., 488 Fed. Appx. 981, 986 (6th Cir. 2012)("Battle, as a woman, is a member of a protected class, and she presented sufficient evidence to establish that she was not hired for the director position, that she was qualified for it, and that a male applicant was hired to fill the position. She therefore set forth a prima facie case of discrimination.")

Essentially, Defendant is arguing that the Court should rely on some of the reasons articulated by the interview panel for choosing Miller over Plaintiff, as well as the Defendant's "purported preferences for the position." Ray v. Oakland County Circuit Court, 355 Fed. Appx. 873, 884 (6th Cir. 2009). Such a comparison risks "conflating the first (*prima facie* case) and second (articulation of a legitimate non-discriminatory reason) steps in the McDonnell-Douglas analysis." White, 429 F.3d at 242. See Plumb v. Potter, 212 Fed. Appx. 472, 479 (6th Cir. 2007). The relative weight assigned by the interview panel "to a candidate's qualifications and attributes are irrelevant in determining whether [Plaintiff] made out a *prima facie* case." Ray, 355 Fed. Appx. at 884. "'[A] court misapplies the structure of McDonnell Douglas by holding that [plaintiff] fails at the *prima facie* stage due to defendant's nondiscriminatory reason.'" Id. (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000). The interview panel's stated preferences for what they most valued in an applicant should be considered in the second and third steps of the McDonnell Douglas framework. For these reasons, the Court finds that Plaintiff has set forth a *prima facie* case of discrimination.

### C. Legitimate, Non–Discriminatory Reason

Because Plaintiff established a *prima facie* case of gender and age discrimination, Defendant must offer a legitimate reason for the selection of Miller instead of Plaintiff. According to Defendant, the interview panel, comprised of one woman and two individuals older than Plaintiff, were unanimous in making the recommendation of Miller for the farm loan manager position in Owensboro. Defendant maintains that Miller was more qualified for the position than Plaintiff. At the time of the interview, Miller was already serving as a farm loan manager in another county. Donald Dunn explained that the interview panel was seeking someone with technical skills and leadership skills to deliver farm loan programs. Dunn indicated that while all five candidates had loan approval authority, the main area of consideration was someone who had leadership capabilities or had the potential for leadership skills. Dunn cited the fact that Miller had documented results as a farm loan manager by cleaning up a lot of problems in his current farm loan manager position and by increasing loan volume in that office. Dunn stated that Plaintiff was a super loan officer – "she knew the borrowers, she knew the employees, and she handled difficult situations when she was in an acting supervisor role for approximately [three] months" -- but she failed to demonstrate her leadership qualities in the interview. (A.R. at 106.) Dunn indicated that the applicants received a numerical score for their answers to a set of identical interview questions. Miller received the following scores: 101, 101, and 102. Byrd received a 74, 103, and 91. (A.R. at 213-24.)

Similar to Dunn's reasons for selecting Miller, Mitchell Whittle explained that Miller was more aggressive in the making and processing of farm loans, in outreach, and in working with new customers than Plaintiff. (A.R. at 123.) Likewise, Debbie Wakefield testified that while Plaintiff had more years of service than Miller, Wakefield believed that Miller had done a good job turning the Henry County office around and felt that Miller was a better fit to manage the

farm loan program. (A.R. at 130.). Panelist also indicated that Miller's interview performance was superior to that of the other applicants. Dunn described Byrd as nervous during the interview and indicated that some of her answers did not "zero" in on the panel's questions.

Accordingly, Defendant offers a legitimate, non-discriminatory explanation for the selection of Miller instead of Plaintiff, thus destroying "'the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.'" Manzer, 29 F.3d at 1082 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981)).

### D. Pretext

In order to establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer, 29 F.3d at 1084. Ultimately, to carry her burden in opposing summary judgment, the Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendant's explanation of why it did not hire Plaintiff for the position. Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009).

First, Plaintiff argues that there is no legitimate basis in fact for claiming that Miller's performance as a farm loan manager was superior to Plaintiff's proven capabilities in the same position. Plaintiff contends that Defendant's list of claimed legitimate reasons ignore the overwhelming qualifications of Plaintiff for the positon. Specifically, Plaintiff cites to her unique knowledge and familiarity with the many farmers in the geographical area, as well as their specific needs and backgrounds. Plaintiff also notes that the former farm loan manager Kathy Hazelwood indicated that Plaintiff was the most qualified for the position.

The statements of Plaintiff, Hazelwood, and the panel members reveal a difference of opinion regarding the appropriate person for the farm loan manager position; however, these differing opinions do not provide support for Plaintiff's claim of gender or age discrimination.

9

Plaintiff cannot avoid summary judgment merely by disagreeing with the Defendant's decision to hire Miller for the position. See Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285–86 (6th Cir. 2012) (the pertinent issue is whether the employer made an honest, informed business judgment, not whether that business judgment was correct or ideal); Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996)("the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with"; rather, it forbids them only from making decisions "for impermissible, discriminatory reasons"); Adams v. Tennessee Dept. of Finance & Admin., 179 Fed. Appx. 266, 272 (6th Cir. 2006) ("Courts are not intended to act as super personnel departments to second guess an employer's facially legitimate business decisions."). Even accepting that Defendant hired Miller as payback for his success as Farm Loan Manager in the New Castle office, this information does not create a genuine dispute as to whether Defendant's decision was motivated by gender or age. An employer's business judgment to reward an employee for taking on a difficult, unwanted task of managing an office with known operating problems is not a decision made for impermissible, discriminatory reasons.

 Second, Plaintiff maintains that women are under-represented in the positon of farm loan managers in Kentucky. Plaintiff contends that this statistic supports her claim that the Defendant's purported reason for not hiring Plaintiff as the farm loan manager is a pretext for discrimination. Specifically, Plaintiff contends that in 2012 three of 18 farm loan managers in Kentucky were female. Plaintiff concludes that since eighty-three percent of farm loan managers in Kentucky are male, the Department of Agriculture is maintaining a policy of selecting only male applications.

 The Sixth Circuit has cautioned that "'courts must be careful to evaluate the proffered statistical analyses in light of the total circumstances present in a given case'" because

10

"[i]ncomplete or inapplicable analyses, simplistic percentage comparisons, and small sample sizes produce statistical analyses with little probative value.'" Diebel v. L & H Resources, LLC, 492 Fed. Appx. 523, 532 (6th Cir. 2012)(quoting Shollenbarger v. Planes Moving & Storage, 297 Fed. Appx. 483, 485 (6th Cir. 2008)). "Even greater caution is warranted when general statistics are used to show that age [or gender] caused the result in the case of one individual." Diebel, 492 Fed. Appx. at 532 (citing Tom Tinkham, T*he Uses and Misuses of Statistical Proof in Age Discrimination Claims*, 27 Hofstra Lab. & Empl. L.J. 357, 362 (2010) ("In an individual case, a high level of statistical significance will not tell you whether age caused the result in that individual situation.")). See also Turner v. Public Serv. Co. of Colorado, 563 F.3d 1136, 1147 (10th Cir. 2009) (holding that non-contextual statistics of gender disparities in the workplace do not raise a genuine issue of material fact that such a condition is the result of gender discrimination, or that such gender discrimination was responsible for the alleged employment action).

Although the statistics provided by Plaintiff may present a disparity, Plaintiff "has made no effort to eliminate any of the several other possible explanations for the disparity." Diebel, 492 Fed. Appx. at 532. "Failure to control for random chance or employee abilities frequently undercuts statistical attempts to show pretext-and it does so here." Id. (citing Conner v. State Farm Mut. Auto. Ins. Co., 273 Fed. Appx. 438, 442–43 (6th Cir. 2008); Hilbert v. Ohio Dept. of Rehab. & Corr., 121 Fed. Appx. 104, 110 (6th Cir. 2005); Anderson v. Otis Elevator Co., 923 F. Supp. 2d 1032, 1074–75 (E.D. Mich. 2013). Additionally, Plaintiff failed to provide the Court with comparable statistics regarding the relevant applicant pool. Ray v. Waste Mgmt. of Kentucky, LLC, 2012 WL 2430469, *4–5 (W.D. Ky. June 26, 2012)(citing Hall v. Martin Marietta Energy Systems, Inc., 856 F. Supp. 1207, 1214 (W.D. Ky. June 1, 1994). The fact that women comprised over fifty percent of the loan officers in Kentucky does not indicate that the

11

applicant pools for the farm loan manager positions were comprised of a comparable number of women. Therefore, this statistic is not useful to support Plaintiff's gender discrimination claim.

Accordingly, Plaintiff has failed to demonstrate that Defendant's proffered reasons had no basis in fact, did not actually motivate Defendant's challenged conduct, or were insufficient to motivate Defendant's challenged conduct. See Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 268 (6th Cir. 2010). The Court concludes that Plaintiff has not shown Defendant's proffered reason for not hiring her for the position of farm loan manager was pretext for gender or age discrimination. Accordingly, Defendant is entitled to summary judgment as to this claim.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motion by Defendant, Thomas J. Vilsack, Secretary of Agriculture, for summary judgment dismissing Plaintiff's claims for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and for age discrimination under the Age Discrimination Employment Act, 29 U.S.C. § 621–634 [DN 41] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

November 2, 2016